IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 2:09cr182-MEF |
| | ) | (WO) |
| EDDIE BOWMAN | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.  Introduction

The defendant, Eddie Bowman ("Bowman"), is charged with the unlawful transport
of a firearm, in violation of 18 U.S.C. § 922(g)(1).  On January 13, 2010, Bowman filed a
motion to suppress a .25 caliber pistol seized without a warrant during a search of a mobile
home.  (Doc. No. 12.)  The court held an evidentiary hearing on the motion on January 29,
2010.  Based on the evidence presented to the court and the argument of the parties, the court
concludes that the motion to suppress is due to be denied.

## II.  Facts

On May 13, 2009, a city magistrate issued two warrants for the arrest of Bowman.
(Attach. to Doc. No. 19, Gov's Ex. 1 & 2.)  The affidavits attached to the warrants alleged
that Bowman had committed attempted murder and murder on May 13, 2009. (*Id*.)

After the warrants were issued, Officer Irven Dwayne Richardson and several other
members of the Gulf Coast Region Fugitive Task Force began searching for Bowman.  On
the afternoon of May 18, 2009, a confidential informant told Task Force members that
Bowman was inside a particular mobile home on County Road 4 in Prattville, that he was
carrying a .25 caliber pistol, and that he had arrived at the mobile home the day beforehand

with a longtime girlfriend.  (R. 6, 11.)  The informant also advised that the mobile home belonged to a friend of one of Bowman's relatives and that the friend "allowed" Bowman to "hide out" there.  (R. 7, 11.)

Around two o'clock in the afternoon, the Task Force officers approached the mobile home.  (R. 8.)  The front door was wide open.  (R. 7.)  When the officers walked into the living room, Bowman and a young woman were lying on a couch and appeared to be asleep. (*Id.*)  The officers rolled Bowman off the couch and placed him on the floor approximately four or five feet away from the couch.  (R. 7-9.)  Bowman's girlfriend was also placed on the floor approximately three or four feet from the couch.  (R. 7-8.)  As soon as the officers handcuffed Bowman, Officer Richardson lifted up a cushion on the couch on which Bowman had been laying and located and secured a .25 caliber pistol.  (R. 9-10.)

### III.  Discussion

### A. Houseguest Expectation of Privacy

The Government argues that Bowman failed to present sufficient evidence demonstrating that he had a reasonable expectation of privacy in the mobile home. Specifically, the Government argues that Bowman's use of another's residence as a "hide out" is not enough to demonstrate that Bowman had an expectation of privacy in the mobile home that society is prepared to recognize as reasonable.  Bowman, however, argues that his status as a houseguest establishes that he had a reasonable expectation of privacy in the residence.

While the government bears the burden to demonstrate an exception to the warrant

requirement where police conduct a warrantless search of a residence, the defendant first bears the burden to demonstrate that he had a legitimate expectation of privacy in the area searched. *Florida v. Riley,* 488 U.S. 445, 455 (1989) (O'Connor, J., concurring); *Rakas v. Illinois*, 439 U.S. 128, 143, n.12 (1978) (defendant's burden to demonstrate reasonable expectation of privacy); *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984) ("defendant bears the burden of demonstrating a legitimate expectation of privacy in the areas to be searched.); *United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999) (a defendant must demonstrate that he personally has an expectation of privacy in the place to be searched, and that his expectation is reasonable).

During the suppression hearing, Officer Richardson testified that the informant indicated that Bowman spent the previous night in the residence and that the homeowner "allowed" him to hide out in his mobile home.  Society recognizes that a houseguest has a legitimate expectation of privacy in a host's home. *See Minnesota v. Olson*, 495 U.S. 91, 95-98 (1990) (defendant had legitimate expectation of privacy as an overnight guest in a home where he was essentially hiding because he was wanted for armed robbery and murder). Thus, Bowman's status as an overnight guest is alone enough to show that Bowman had an expectation of privacy in the mobile home that society is prepared to recognized as reasonable.  Because Bowman's expectation of privacy in the residence was rooted in "'understandings that are recognized and permitted by society,'" *Olson*, 495 U.S. at 100, *quoting Rakas*, 439 U.S. at 144, n. 12, Bowman may claim the protection of the Fourth Amendment.

### B.  The Search and Seizure

Bowman does not contest that the government possessed valid warrants for his arrest, nor does he contest the officers' entry into the mobile home or their lawful presence in the living room on the afternoon of May 18, 2009.  Rather, Bowman contends that the pistol should be suppressed because the search of the couch was conducted to locate a weapon and not people.  *See Maryland v. Buie*, 494 U.S. 325 (1990) (A protective sweep is limited to a cursory inspection of places where a person might be hiding).  Specifically, Bowman argues that, because both he and his girlfriend were in handcuffs at the time the couch was searched and there were no facts that would support a belief that another individual was hiding under the cushion, the search exceeded the scope of a protective sweep.  The Government, however, argues that the firearm found under the cushion is admissible because it was discovered during a lawful search incident to Bowman's arrest.

Under the Supreme Court's general Fourth Amendment jurisprudence, the court must examine the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment.  *United States v. Knights*, 534 U.S. 112, 118 (2001).  Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."  *Id.*, at 118-119 (internal quotation marks omitted).  In *Chimel v. California*, the Court held:

> . . . When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove

4

any weapons that the latter might seek to use in order to resist arrest of effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of the one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

395 U.S. 752, 762-63 (1969).

During the hearing on Bowman's motion to suppress, Officer Richardson testified that he was looking for weapons when he lifted the couch cushion. Thus, the search is justified "only if it is limited to the immediate grasp of a person who the [officer] reasonably suspects poses a danger to his safety." *United States v. Bennett*, 555 F.3d 962, 966 (11th Cir. 2009). Because Officer Richardson received information that Bowman was wanted for murder and was armed with a pistol, it was reasonable for him to suspect that Bowman posed a danger to himself and the other officers. The evidence demonstrates that Bowman was placed on the ground and handcuffed approximately five feet away from the couch and that Officer Richardson lifted up the cushion approximately four seconds after Bowman was handcuffed. Although "it may have been difficult to do while handcuffed, it is not impossible that [Bowman] could have reached" under the cushion for a weapon. *Bennett*, 555 F.3d at 967 (upholding search where, shortly after teenage boys were ordered out of bed and handcuffed,

officer uncovered a rifle between the mattress and box springs).  "A suspect has a leg up on [officers] entering an unfamiliar location because he knows where hidden weapons can be found, and that advantage could aid even a restrained person in reaching a weapon before agents can react."  *Id*.

During oral argument, Bowman suggested that the recent holding in *Arizona v. Gant*, __ U.S. __, 129 S. Ct. 1710 (2009), establishes that Officer Richardson's search of the couch was unreasonable.  In *Gant*, the Court held that a police officer "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.  When these justifications are absent, a search of the arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."  129 S. Ct. at 1723-24.  Bowman argues that, because he was handcuffed and five feet away from the couch at the time of the search, there was no justification for the search.

The holding in *Gant* is limited to searches of vehicles and has not been extended to other searches incident to an arrest. Moreover, as previously discussed, the court finds that it is not impossible that Bowman could have reached under the cushion for a weapon.  In *Atwater v. City of Lago Vista,* 532 U.S. 318 (2001), the Supreme Court instructed that

> a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review.  *See, e.g., United States v. Robinson,* 414 U.S. 218, 234-35, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).  Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and

> the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made.

*Id.* at 347.

Under the circumstances of the instant case the actions of the law enforcement officers on the scene were entirely consistent with the reasonableness standard described in *Chimel*. Because Officer Richardson had a reasonable belief that Bowman could be dangerous and the couch was within an area of Bowman's "immediate control," the court concludes that the search was reasonable. The defendant's motion to suppress the pistol found under the couch cushion should be denied.

## IV.  Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **February 19, 2010.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein*

7

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 5th day of February, 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

8